## LANIER *vs.* BROOKER.

1. Property held under bond for title, with part of the purchase money paid, was sold under an execution against the vendor. By agreement with the holders of the bond, a third party bought at the sheriff's sale, and gave them a bond to convey on re-payment of the purchase price; they failed to pay, but procured another to do so and take a deed from the purchaser; they gave him their note for the amount so paid, and he agreed in parol to convey the land to them on payment thereof. While the title stood thus, a judgment was obtained against him. Still later there was a second substitution of another in his place, similar to the first. A *fi. fa.* against the original holders of the bond for titles was levied, and the property sold. The purchaser continued to pay to the last holder of the title for the purpose of redeeming the lot. The holder of the title brought ejectment against him; and under an equitable plea, the jury found a money verdict against the defendant, with alternative of a *fi. fa.* against the land. A *fi. fa.* against the second taker of the title founded on the judgment above stated, was levied on the land, and the purchaser at the second sheriff's sale, being also defendant in ejectment, claimed :

*Held,* that the agreement to convey title made by the second holder of the title to the original holders of the bond for title was without consideration, and not binding.

2. Even if binding, the title was nevertheless in him by actual purchase, and the lien of the judgment against him attached.

3. The original holders of the bond for title did not have either a fee simple or mortgageable interest in the land which they could convey to the purchaser at the first sheriff's sale, or those who were substituted for him, and therefore were not protected by the act of 1871–2.

4. On the trial of the claim case arising under the *fi. fa.* against the second holder of the title, the record of the ejectment cause between the third holder and the claimant was not admissible.

Judgments.   Lien.   Contracts.   Evidence.   Title. Claim.   Before Judge McCUTCHEN.   Whitfield Superior Court.   April Term, 1880.

A *fi. fa.* in favor of Lanier against Varnell, founded on a judgment rendered in May, 1875, was levied on certain land, and Henry Brooker claimed.   The following are, in brief, the facts:

Bacon sold the lot of land to J. W. & W. H. Brooker on June 1st, 1870. About one third of the purchase money was paid in cash, and a bond to make title on payment of the balance was given.   In October, 1870, one Davis obtained a judgment against Bacon.   In April, 1873, Bacon obtained a judgment against the Brookers for the balance of the purchase money.   In April, 1874, the property was sold as the property of Bacon, and bought by Prater.   This was done at the request of the Brookers, and Prater gave them a bond to make titles if they should repay the price paid by him.   This they failed to do; and in November, 1874, Varnell advanced the money, and took a deed from Prater.   On the same day the Brookers gave to Varnell the following instrument:

"$425.00.   By the fifteenth day of December next, we promise to pay, or cause to be paid, to R. N. Varnell, four hundred and twenty-five dollars for value received.   For the full security of this note, and the payment thereof, a mortgage or lien is hereby given on lot of land number 311, eleventh ——, third section of Whitfield county, Georgia, together with all the rights, and appurtenances in anywise belonging. Dalton, Georgia, November 6th, 1874.

"J. W. & W. H. BROOKER."

Varnell made a parol promise to convey to the Brookers on payment of the money so promised. They failed to pay it. In July, 1875, Varnell conveyed the land to Oxford, who·paid the amount of the Brookers' note. In November, 1875, a *fi. fa.* in favor of one Cannon, against J. W. & W. H. Brooker, which had been levied on the land as belonging to them, sold it, and Henry Brooker bought it. It appeared that after this Henry Brooker paid about two hundred dollars to Oxford towards redeeming the land. In 1878, Oxford brought ejectment against him, the Brookers having held possession ever since the purchase from Bacon. An equitable plea was filed, and the jury found that Brooker pay to Oxford three hundred and forty-eight dollars and seventy-eight cents principal, or in default thereof that execution issue, the property be sold, and the said amount be realized from the property.

On the trial of the present case, the court admitted in evidence the record in the ejectment suit, and charged, in effect, that if Varnell took and held the title to the land as security only for the payment of said note, holding the land in trust only for that purpose, and if they (the Brookers) did redeem, or procure some one else to redeem for them, by paying all the money and taking Varnell's deed to the land, then, while so held by Varnell, it was not subject to the lien of a judgment against him ; and even if the Brookers did not redeem in terms of their contract, yet if Varnell did not elect to take advantage of their failure, but extended the time until they did redeem, the lien of a judgment against him did not attach.

These rulings were assigned as error.

W. K. MOORE, for plaintiff in error.

D. W. HUMPHREYS, for defendant.

CRAWFORD, Justice.

This was a claim case growing out of the levy of an execution against Varnell, on a lot of land, number three hundred and eleven, in the eleventh district, third section of Whitfield county, to which Henry Brooker claimed title. Upon the trial of the case the jury, under the charge of the court and the evidence submitted, found the land not subject, and for the errors alleged to have been committed on the trial the plaintiff in *fi. fa.* excepted.

Though there was much evidence introduced, and the record necessarily voluminous, we think the law of the case neither doubtful nor involved in obscurity by the multiplicity of facts which surround it.

J. W. Bacon sold this land to J. W. & W. H. Brooker, who paid part of the purchase money, gave notes for the balance and took a bond for title. Afterwards the land was levied on and sold as Bacon's, bought by B. F. Prater, to whom the sheriff made a deed. He agreed with the Brookers, who had requested him to buy it in order that they might save themselves, to pay for it and let them have it upon their payment to him of the purchase money, which agreement was put in the shape of a bond to convey the land to them whenever they paid back to him the money thus expended for the land. They failed to pay him, and it was agreed between them that R. N. Varnell pay Prater for the land, take the title, and they would give him their note for the money, specifying the consideration therein. Varnell, on the sixteenth day of November, 1874, paid of his own money the amount which Prater paid for the land and took a deed therefor. So that on that day he had a clear, undisputed legal title in himself to this lot of land, with the purchase money all paid, coming down to him from Bacon, the vendor, to the Brookers, who had endeavored, and were still endeavoring, to protect the money which they had put into the

Lanier *vs.* Brooker.

land when they bought it from Bacon. But their real trouble was, that neither Prater nor Varnell was under any *binding legal obligation* to convey to them the land when they should pay the amount that was paid for the same at the sheriff's sale. The bond was but a voluntary agreement without consideration, and therefore not binding upon Prater, and Varnell never received a dollar, or the promise of one, for the conveyance which he was to make.

Even if that view should be considered untenable, the legal effect of all that was done did but carry Bacon's title, and that of those who held under him, into Prater and then into Varnell, with a verbal promise, unsupported by any consideration, to convey the land to the Brookers if they should pay him the money therefor which he had paid to Prater.

Supposing, however, his promise to be *binding* upon him as to the Brookers, yet whilst the title was thus in him, to-wit: on the twenty-second day of May, 1875, Lanier, the plaintiff in *fi. fa.* in this case, obtained the judgment against him upon which this execution issued, and with which the levy was made upon the land. Varnell then by the proof was the real owner of the land, holding the title, with the purchase money paid out of his own means, from November, 1874, to August, 1875.

Admitting that the Brookers could have forced Varnell to have conveyed the land to them, it could have only been done upon the payment to him of the full amount of money which he paid for his title. It was his till they redeemed.

The claimant rested his title upon a deed made by the sheriff, who had sold this land as the property of the Brookers, which deed was dated November 2d, 1875, and upon the record of an action of ejectment brought by J. D. Oxford, the grantee of Varnell. It is to be remembered that the land was sold as Bacon's, their vendor, in April, 1874.

The facts of this case put it outside of both the letter and the spirit of the act of 1871-2. The Brookers, under that act, never had any mortgageable or fee-simple interest in the land which they could have conveyed to Prater or Varnell. They never could have brought themselves within its operation without having title, and even if they had had title, and conveyed it to the judgment debtor, the lien of such judgment would have attached, unless they had kept themselves within the provisions and were protected by the act referred to.

Taking the case as it is—suppose that on the very day when this land was sold, after Prater had bought, paid for, taken the deed, and given his bond as he did, a *fi. fa.* against him had been levied upon it, what would have prevented its sale? Nothing that appears in this record. When Varnell, against whom there was an execution, got the title and paid the money for it, there was nothing higher in his title, as shown by the record, to prevent the levy and sale in satisfaction thereof.

Our judgment, therefore, is that the charge of the court was error—the admission of the record in the ejectment suit improper, and that the judgment be reversed.

Judgment reversed.